## Johns v. Johns

*Lawrence D. MacDonald,* for plaintiff.
*Kimberly D. Borland,* for defendant
*Thomas P. Brennan,* for garnishee.

TOOLE, *P.J.*, April 9, 1992—This matter comes before the court upon claim of James J. Johns, (defendant), for exemption and/or immunity of certain property from execution. Maureen Johns, (plaintiff) and the garnishee, First Eastern Bank, N.A., opposed any exemption and/or immunity.

This case arises out of a domestic relations matter. The plaintiff and defendant were married and experiencing domestic difficulties when the defendant secured a Haitian divorce on February 26, 1976, and purported to marry Dorothy Simon on April 9, 1976. The Haitian divorce and marriage were declared null and void by decree of this court on November 16, 1976. Despite this decree the defendant and Simon continued to live together and held themselves out as husband and wife.

On January 24, 1992, plaintiff obtained a judgment against the defendant in the amount of $4,009 and on the same date caused a writ of execution to be issued attaching the property of the defendant in the possession of First Eastern. The record also establishes that on the same date the sheriff mailed the defendant a copy of the writ of execution and a claim for exemption form.

After conducting a search for accounts, the garnishee, First Eastern, filed answers to the attachment interrogatories on January 31, 1992. According to that answer, the defendant had an IRA account and three certificates of deposit in his own name; a certificate of deposit and two checking and one saving account in his name and Dorothy Johns (Simon).[1] In accordance

---

1. The bank subsequently discovered that the IRA account and the three certificates of deposit were not separate and distinct accounts. In fact, the three certificates of deposit constitute the IRA account.

with the bank's practice in cases of this kind, not to hold more accounts than required, First Eastern placed a hold on the certificates of deposit in defendant's name and released the remaining accounts.[2]  On January 31, 1992, the bank forwarded a copy of the proposed answer, a copy of the writ of execution notice and a claim for exemption form, together with a list of major exemptions to the defendant.  That mailing, which was sent certified mail, return receipt requested, was received on February 3, 1992.

Plaintiff took judgment against the garnishee on February 26, 1992, for $4,142.50, representing the judgment of $4,009 plus $133.50 in costs.

On or about March 11, 1992, defendant filed a formal claim for the $300 statutory exemption as well as a claim for exemption of all funds held by First Eastern relative to an IRA account.  Two days later, March 13, 1992, defendant filed an amended claim for exemption stating that all the accounts held jointly with Dorothy Johns were likewise exempt as accounts held by the parties as tenants by the entireties.

The plaintiff argues the claim for exemption was not timely filed since it was filed subsequent to the taking of the judgment against the garnishee.  Plaintiff also contends that the defendant and Dorothy Johns are not lawfully married and therefore the accounts could not be held as tenants by the entireties.

First Eastern finds itself in a strange position since judgment has been entered against it and the defendant now seeks an exemption.  The bank contends that al-

---

2. Our disposition should in no way be taken as approving this practice or as holding it to be proper or appropriate.

lowing a claim for exemption after a personal judgment is entered against the garnishee unreasonably exposes the personal assets of the garnishee. The bank contends that the exemption claim is untimely but proposes further that if this court should allow the exemption that fairness dictates that we also strike the judgment against the garnishee and afford it the right to file an amended response.

The defendant contends that his claim for exemption and immunity from execution was timely filed, that his IRA is exempt pursuant to statutory law, and the accounts held as tenants by the entireties are immune from execution as a result of a common law marriage.

The matter has been briefed and argued and is now ripe for resolution.

As we view this matter, our first inquiry must be to determine whether the IRA account in the amount of $26,098 consisting of three C.D.s in the name of the defendant are exempt by law. Defendants direct our attention to 42 Pa.C.S. §8124(b) entitled "Retirement Funds and Accounts" which provides that any retirement or annuity fund provided for under the Internal Revenue Code of 1986, the appreciation thereon, the income therefrom and the benefits or annuity payable thereunder, are exempt from attachment or execution on a judgment.

Our attention has also been directed to section 8122 of the Code entitled "Waiver of Exemption" which declares:

"Exemptions from attachment or execution granted by statute may not be waived by the debtor by express

or implied contract before or after the commencement of the matter, the entry of judgment or otherwise."

We must first decide whether the IRA exemption can be waived by failure to timely claim the same during the execution process. Since the debtor could not have waived the statutory exemption for his IRA funds by contract before the entry of judgment or the initiation of the execution process, we see no legislative or judicial reason to require that he claim it or lose it in the execution/garnishment proceeding. The statute evinces a legislative intent to protect IRA funds from the attachment or execution process whenever or however initiated or pursued. We therefore declare and hold that funds designated as statutorily exempt in section 8124(b) are automatically exempt from the designated processes and need not be claimed on or in any form by the debtor in order to secure or take advantage of the exemption. The debtor need not claim the benefit of these statutory exemptions since the law clearly dictates that they are automatically exempt whether claimed on an exemption form or not.

We next turn to defendant's contention that the accounts in his name and Dorothy Johns are exempt as accounts held by tenants by the entirety.

There are two kinds of marriage in Pennsylvania: (1) ceremonial; and (2) common law. As our appellate courts have noted, it is too often forgotten that a common law marriage is a marriage by the express agreement of the parties without ceremony, and almost invariably without a witness, by words—not in futuro or in postea, but—in praesenti, uttered with a view and for the purpose of establishing relationship of husband and wife.

*In re Manfredi Estate,* 399 Pa. 285, 159 A.2d 697 (1960). It has also been noted that although the use of verba de praesenti in entering into a marriage contract is not essential, *(In re Estate of Stauffer,* 504 Pa. 626, 476 A.2d 354 (1984)) cohabitation and reputation of marriage do not create a marriage. *(Pierce v. Pierce,* 355 Pa. 175, 49 A.2d 346 (1946))* However, where a relationship is meretricious in its inception, there must be clear evidence of change in status to rebut the presumption that the non-marriage continued after the impediment to marriage was removed. *Steadman v. Turner,* 357 Pa. Super. 361, 516 A.2d 21 (1986), *appeal denied,* 515 Pa. 624, 531 A.2d 431 (1987).

In the instant case this court voided the Haitian divorce and marriage of the defendant and Dorothy Johns. The parties, therefore, were not husband and wife when these accounts were opened and were, it would appear, merely living together in an apparent meretricious relationship. When the parties actually divorced in January of 1991, the divorce did not change that meretricious relationship into a valid marriage. As noted, cohabitation and reputation is incapable of raising a presumption of marriage when the cohabitation and reputation, as here, occurred before removal of the impediment.

The existence of the impediment to marriage rendered defendant's cohabitation and reputation of marriage which occurred before the divorce incapable of raising any presumption of marriage. Defendant's claim of cohabitation and reputation of marriage after that divorce is equally unavailing to rebut the presumption that the non-marriage continued. For this court to find that the parties entered into a valid marriage contract

the record must clearly establish an intent to enter into such a relationship after defendant was granted his divorce and the burden of proving that was upon the defendant. *Commonwealth ex rel. Pilla v. Pilla*, 189 Pa. Super. 302, 150 A.2d 365 (1959).

In this case the only evidence presented on this issue was by the defendant and we do not believe that testimony, either on direct or cross-examination, establishes with the required clarity any intent to enter into a marriage after he was granted his divorce. We reject defendant's contention that a common law marriage exists and hold therefore that the accounts with Dorothy Johns are not held as tenants by the entireties.

Having decided that the IRA funds are exempt and that the other accounts are not held as tenants by the entireties, we need not and do not address the claims that the exemptions were not timely filed. We do, however, feel obliged to address the concern of the bank that permitting the judgment to stand against it is unfair. We agree. Under the circumstances, we believe the interests of justice require that we open the judgment and authorize the garnishee to file a new and updated response to the interrogatories.

For each of the reasons cited herein we enter the following

## ORDER

After hearing, it is ordered, adjudged and decreed:

(1) That the claim for exemption of James J. Johns of his IRA account is sustained.

(2) The defendant's claim that the accounts held by he and Dorothy Johns are exempt or immune is denied.

(3) The judgment entered against the garnishee, First Eastern Bank, is hereby opened and said garnishee shall be permitted to file an amended answer to the interrogatories within ten days from the date of this order.